IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-00051-CNS-SKC

DENNIS MUNDT, individually; and
DENNIS MUNDT, as next friend and parent of D.J.M., a minor child,

      Plaintiffs,

v.

CAMILLE GADZIALA, in her individual capacity; and
JOI JOHNSON, in her individual capacity,

      Defendants.

---

## ORDER

---

    Before the Court is Defendants' motion to dismiss. ECF No. 9.[1] For the following reasons, the motion to dismiss is GRANTED as to Defendant Johnson and DENIED as to Defendant Gadziala.

## I. BACKGROUND[2]

    D.J.M. is the minor child of Plaintiff Dennis Mundt and Debra Hennesy. ECF No. 1, ¶ 8. At all relevant times, Plaintiff Mundt and Ms. Hennesy shared equal parenting time

---

[1] The Tenth Circuit reversed and remanded this Court's prior order granting Defendants' motion to dismiss. ECF Nos. 28 (Tenth Circuit Order and Judgment), 21 (order granting motion to dismiss), 9 (motion to dismiss). Consistent with the Tenth Circuit's Order and Judgment, the Court revisits the motion to dismiss.
[2] The factual background section is constructed solely based on facts alleged in the complaint. The Court accepts the allegations in the complaint as true.

of D.J.M. *Id.*, ¶ 10. However, Ms. Hennesy retained sole medical decision-making authority regarding D.J.M. *Id.*, ¶ 9. Plaintiff Mundt was allowed to attend one appointment per year with each of D.J.M.'s medical providers. *Id.*

On November 30, 2020, the Douglas County Department of Human Services (DCDHS) received a report from D.J.M.'s school expressing concerns about his health. *Id.*, ¶ 11. Specifically, the report addressed his ability to participate in strenuous activities and Ms. Hennesy's alleged failure to address D.J.M.'s medical needs. *Id.* DCDHS did not interfere with Ms. Hennesy's parenting time or obtain a court order for D.J.M. to receive medical attention. *Id.*, ¶ 12.

On January 5, 2021, Ms. Hennesy emailed Defendant Gadziala, a DCDHS caseworker, accusing Plaintiff Mundt of having Munchausen syndrome by proxy.[3] The email also stated that, during the preceding week, Plaintiff Mundt had scheduled and attended several medical appointments for D.J.M. without authorization. ECF No. 1, ¶¶ 13–15. Ms. Hennesy further expressed concern that Plaintiff Mundt might be drugging D.J.M. in order to elicit symptoms and give the appearance that D.J.M. suffered from a serious health condition. *Id.*, ¶ 16.

That same day, Defendant Gadziala spoke by phone with Nikki Wacker, a nurse at Southeast Denver Pediatrics, who confirmed that while Plaintiff Mundt could have "no medical decision making whatsoever," he could attend one annual appointment with each

---

[3] "Munchausen syndrome by proxy" is a condition in which a caregiver fabricates or induces symptoms in another person, typically their child, to create the appearance that the child suffers from a real illness and, by extension, to gain sympathy and attention from medical providers. *See* Filho Daniel de Sousa, et al., *Munchausen syndrome and Munchausen syndrome by proxy: a narrative review*, Nat'l Libr. of Med., https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5875173/ (last accessed Dec. 20, 2023).

of D.J.M.'s providers. *Id.*, ¶¶ 17–18. Nurse Wacker also said that, "from their office's point of view, [Mr. Mundt] is in his limitations." *Id.*

On January 4, 2021, prior to receiving Ms. Hennesy's email, Defendant Gadziala obtained Plaintiff D.J.M.'s medical records from Rocky Mountain Pediatric Cardiology. *Id.*, ¶ 19. Plaintiff Mundt alleges that these records indicated that D.J.M. had medically observable cardiac issues, that he had received a medical diagnosis of chest pains and "tachycardia or dysrhythmia," and that Plaintiff Mundt was not interfering with or escalating D.J.M.'s medical care or giving him substances to elevate his pulse. *Id.*, ¶ 21. The records also allegedly indicated compliance with the "one appointment per year" requirement. *Id.* Defendant Gadziala did not obtain any other medical records or speak to any other medical care providers. *Id.*, ¶ 23.

On January 6, 2021, Ms. Hennesy made a report to the Parker Police Department (PPD) alleging medical abuse and neglect by Plaintiff Mundt. *Id.*, ¶ 24. That afternoon, a PPD officer conducted a welfare check at Plaintiff Mundt's home and spoke at length with both Plaintiff Mundt and D.J.M. *Id.*, ¶¶ 27–29. The officer noted that D.J.M. "seemed to be in good spirits and had all of his schoolwork complete. The residence was clean and organized." *Id.*, ¶ 28. The officer concluded that no safety concerns were present for D.J.M. *Id.*, ¶ 29.

After PPD had completed its welfare check, Defendant Gadziala petitioned for an *ex parte* emergency removal order that same day. *Id.*, ¶ 30. The petition was to remove D.J.M. from Plaintiff Mundt's custody, keeping him in the custody of Ms. Hennesy. *Id.*

Plaintiff Mundt alleges that Defendant Gadziala submitted seven materially false or misleading statements to the court in support of this petition. *Id.*, ¶ 31. The statements, which appear in the Douglas County District Court's written emergency removal order and which Plaintiff Mundt attributes to Defendant Gadziala, are:

- "Throughout this current assessment it has become a concern that [Mr. Mundt] is unnecessarily seeking medical care from various entities for [D.J.M.] and suggesting that [Ms. Hennesy] is not providing adequate medical care for him."

- "Caseworker Gadziala has reviewed documentation and spoken with medical professionals who have not shared any of the concerns that [Mr. Mundt] is making."

- "Recently, [Mr. Mundt] has taken [D.J.M.] to medical appointments without [Ms. Hennesy's] permission or knowledge and has been successful in obtaining additional referrals for the child to see specialists."

- "[DCDHS] is concerned that [Mr. Mundt] is escalating in behaviors of seeking out medical issues that don't exist for the child [D.J.M.], to the point that the child [D.J.M.] is fearful something grave may happen to him if he is not seen by the medical professionals that [Mr. Mundt] is demanding."

- "During a home visit with the child he became tearful when discussing his medical issues that, to him, are unresolved."

- Mr. Mundt had initiated a "recent escalation in seeking additional medical professionals and testing" for D.J.M.

- "Reasonable efforts have been made to prevent removal and these have failed."

*Id.*, ¶ 31. The court issued an emergency removal order for D.J.M. to remain in Ms. Hennesy's custody on January 6, 2021. *Id.*, ¶¶ 30, 33.

On the evening of January 6, Defendant Gadziala, accompanied by two PPD officers, went to Plaintiff Mundt's residence to remove D.J.M. *Id.*, ¶ 32. The officers' body-worn camera footage from that encounter reveals that D.J.M. repeatedly stated that he felt safe living with Plaintiff Mundt, that "whatever was said about my dad [is false]," and

that "[i]f my mom like falsely charges my dad with something, . . . I'm just going to say
he's innocent." *Id.*, ¶ 36. D.J.M. also stated that he did not feel safe living with Ms.
Hennesy, that "it would be worse there," and that "my mom has lied about things." *Id.*,
¶ 38.

On January 7, 2021, DCDHS filed a petition for temporary custody. *Id.*, ¶ 41. The
petition was supported by an affidavit from Defendant Gadziala. Plaintiff Mundt alleges
that the affidavit contained four additional materially false or misleading statements:

- "Throughout Caseworker Gadziala's assessment, information was gathered from
  [D.J.M.'s] medical providers[.]"

- "There are concerns based on review of [m]edical records that information
  provided during these visits are being exaggerated in order for [D.J.M.] to receive
  additional interventions which may not be necessary."

- "Mr. Mundt's persistence has clearly impacted [D.J.M.'s] perception of his own
  health issues."

- "Despite court orders, Mr. Mundt continues to push for the highest level of medical
  intervention for [D.J.M.]."

*Id.*, ¶ 43. As a result of DCDHS's petition, Plaintiff Mundt was ordered to have no contact
with D.J.M. *Id.*, ¶ 48.

After D.J.M.'s emergency removal and the temporary custody order, Defendant
Gadziala continued her investigation. *Id.*, ¶ 49. On January 8 and 22, 2021, she called
four of D.J.M.'s medical providers, who confirmed that no new referrals to specialists had
been made on D.J.M.'s behalf. *Id.*, ¶¶ 49–53. On January 7, 2021, D.J.M. underwent a
court-ordered hair follicle drug test, which was "negative" for all substances. *Id.*, ¶¶ 56–
57, 75–76. Defendant Gadziala did not provide the drug test results to the court, nor did

she inform the court of what she had learned from D.J.M.'s medical providers following the court's temporary custody order. *Id.*, ¶¶ 54, 58, 74.

Meanwhile, Joi Johnson, another DCDHS employee, was assigned as the permanency caseworker to D.J.M.'s case. *Id.*, ¶¶ 5, 88. Permanency caseworkers are required to meet with parents at least once per month. *Id.*, ¶¶ 88–89. However, Defendant Johnson never met with Plaintiff Mundt, despite receiving at least five requests for a meeting from Plaintiff Mundt or his counsel. *Id.*, ¶¶ 90–95, 97.

On August 16, 2021, Plaintiff Mundt's treating psychiatrist wrote a letter to DCDHS recommending a full return to 50/50 joint custody, as there was no evidence of abuse, dependency, neglect, endangerment, somatization, or Munchausen's syndrome. *Id.*, ¶¶ 65–66. DCDHS did not respond to the letter. *Id.*, ¶¶ 67–68. Ultimately, DCDHS dismissed the dependency and neglect action, and Plaintiff Mundt regained equal parenting time of D.J.M. in October 2021. *Id.*, ¶¶ 80, 85.

Plaintiff Mundt alleges that Defendant Gadziala intentionally failed to disclose the drug test results because it would have revealed that she had not conducted a thorough investigation prior to removing D.J.M. *Id.*, ¶ 78. He also alleges that Defendant Gadziala should have conducted these investigations prior to removal, and that she made materially false statements in her affidavit that she never corrected. *Id.*, ¶ 54.

Plaintiff Mundt filed suit against Defendants Gadziala and Johnson, alleging violations of his Fourteenth Amendment procedural and substantive due process rights, as well as his Fourth Amendment rights, under 42 U.S.C. § 1983. *See id.*, ¶¶ 99–142. Defendants moved to dismiss. ECF No. 9. The Court granted the motion to dismiss,

finding that Defendant Gadziala was entitled to qualified immunity and that Defendant Johnson was entitled to absolute immunity. ECF No. 21. Plaintiff Mundt appealed. ECF No. 23.

The Tenth Circuit reversed and remanded the Court's order dismissing the case, finding that the Court improperly relied on information in the exhibits attached to the motion to dismiss. ECF No. 28 at 10–12. The Tenth Circuit instructed this Court to analyze whether Defendant Gadziala is entitled to qualified immunity solely based on the allegations in the complaint. As to Defendant Johnson, the Tenth Circuit held that she was not entitled to absolute immunity and remanded to the Court to determine whether she is entitled to qualified immunity.

Pursuant to the Tenth Circuit's order, the Court revisits the motion to dismiss.

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a

claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Having reviewed the parties' briefing, the entire case file, and pertinent legal authority in light of the Tenth Circuit's remand order, the Court grants the motion to dismiss as to Defendant Johnson and denies it as to Defendant Gadziala.

#### A. Defendant Johnson

Defendants argue that Defendant Johnson is entitled to qualified immunity because she did not violate a clearly established right. The Court agrees.

Plaintiff Mundt alleges that Defendant Johnson violated his procedural due process rights under the Fourteenth Amendment by failing to meet with him monthly, as required by Colorado law. He also brings a substantive due process claim, alleging that the failure to meet with him monthly interfered with Plaintiff Mundt's fundamental right to familial integrity.

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated'" their rights. *Hale v. Duvall*, 268 F.Supp.3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1249 (10th Cir. 2008). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (quotation omitted). A plaintiff is not required to cite a case with "identical facts" to demonstrate a clearly established right, *Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020), but clearly established law must place the statutory or constitutional question "beyond debate," *Mullenix v. Luna*, 577 U.S. 7, 16 (2015) (quotation omitted). A "broad, generalized proposition" of a right is insufficient; instead, "the contours of the right must be sufficiently clear" such that "a reasonable official would understand" that the conduct in question violates that right. *Anderson v. Creighton*, 483 U.S. 635, 635 (1987).

Plaintiff Mundt brings claims, via § 1983, that Defendant Johnson violated his Fourteenth Amendment procedural and substantive due process rights.[4] He alleges that, despite Defendant Johnson being required by law to meet with Plaintiff Mundt at least once per month, and despite Plaintiff Mundt requesting to meet on at least five separate occasions, Defendant Johnson never once met with him. ECF No. 1, ¶¶ 88–95, 97. These meetings were required pursuant to Colorado regulation. 12 CCR § 2509-3:7.204(B)(1) ("[A] face-to-face contact is required every calendar month with parent(s)/guardian(s) of the child(ren)/youth.").

### 1. Statutory Right

Plaintiff Mundt first argues that 12 CCR § 2509-3:7.204(B)(1) on its own establishes a right for qualified immunity purposes. The Court disagrees. While it is true that a government official is not entitled to qualified immunity when their conduct violates a clearly established statutory right, such a right must be based on federal law, not state law. *See T.D.*, 868 F.3d at 1220 ("Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a *federal* constitutional or statutory right." (emphasis added)). The right must also be based on a statute, not a regulation. *Id.* Because 12 CCR § 2509-3:7.204(B)(1) is a state regulation, not a federal statute, it is insufficient on its own to establish a right for qualified immunity purposes.

---

[4] Plaintiff Mundt concedes that he does not bring a Fourth Amendment claim against Defendant Johnson. To the extent that the § 1983 claim against Defendant Johnson involves an underlying Fourth Amendment violation, this claim is dismissed.

### 2. Substantive Due Process

Defendant Johnson is also entitled to qualified immunity as to the substantive due process claim. First, Plaintiff Mundt did not sufficiently allege that Defendant Johnson's failure to meet with him monthly violated his substantive due process rights. While parents have a liberty interest in the care, custody, and management of their children, Plaintiff Mundt does not allege that this right includes a right to attend meetings with a case worker. The only relevant allegation is that "a single face-to-face meeting would have shown that Plaintiff D.J.M. should not have been removed from Plaintiff Mundt's home in the first place or, at the very least, that Plaintiff Mundt's parenting time should have been restored immediately." ECF No. 1, ¶ 98.

However, regardless of whether the complaint sufficiently alleges that Defendant Johnson violated Plaintiff Mundt's substantive due process rights, Plaintiff Mundt has not satisfied the second prong of the qualified immunity analysis. He points to no authority establishing that a parent has a constitutional right to monthly meetings with a case worker, or any case illustrating the contours of the right to familial integrity in an analogous context. The Court is also unaware of any case with similar facts that might suggest that a case worker has a constitutional duty to meet with a child's parent once a month. Thus, if such a right existed, it was not clearly established.

### 3. Procedural Due Process

Finally, Plaintiff Mundt alleges that 12 CCR § 2509-3:7.204(B)(1) "put Defendant Johnson on notice that failing to conduct monthly face-to-face meetings would deprive both Plaintiffs of their constitutional rights." ECF No. 13 at 13. Generally, "violations of

state law and [] procedure generally do not give rise to a § 1983 claim." *Romero v. Bd. of Cnty. Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995); *Rector v. City and Cnty. of Denver*, 348 F.3d 935, 947 (10th Cir. 2003) ("[A] state's violation of its own laws does not create a claim under § 1983."). However, a violation of state law *is* actionable under § 1983 if it creates a liberty interest protectible by procedural due process under the Fourteenth Amendment. *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir 1994). To create a liberty interest, the state statute must contain "explicitly mandatory language," meaning "specific directives to the decisionmaker that if the [statute's] substantive predicates are present, a particular outcome must follow." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). An "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983). A statute may extend procedural rights without establishing grounds for a procedural due process violation if it fails to "protect a substantive interest to which the individual has a legitimate claim of entitlement." *Elliott v. Martinez*, 740 F. Supp. 2d 1269, 1273 (D.N.M. 2010).

Here, the regulation at issue states, "[f]or program areas 4, 5, and 6 . . . a face-to-face contact is required every calendar month with parent(s)/guardian(s) of the child(ren)/youth." 12 CCR § 2509-3:7.204(B)(1). This regulation simply requires process; it does not establish a substantive interest to which a parent has a legitimate claim of entitlement. It does not, for instance, require a particular outcome to occur based on those meetings or establish any substantive predicates to those meetings. Thus, the regulation

does not create a new liberty interest that is protectible by the Procedural Due Process clause.

Additionally, the regulation does not create a liberty interest protectible by the Due Process Clause because the liberty interest at issue, familial integrity, is already constitutionally protected. The "state does not create new constitutional rights by enacting laws designed to protect existing constitutional rights." *James v. Rowlands*, 606 F.3d 646, 657 (9th Cir. 2010). The Ninth Circuit, in a similar case, held that even though the plaintiff had a "constitutionally protected liberty interest in participating in the care and management of [his] children," a statute requiring process to protect that right did not create a separate liberty interest, and so a violation of that statute was not actionable as a procedural due process violation. *Id.* In essence,

> when a state establishes procedures to protect a liberty interest that arises from the Constitution itself—like a parent's liberty interest here—the state does not thereby create a new constitutional right to those procedures themselves, and non-compliance with those procedures does not necessarily violate the Due Process Clause. Rather, the Due Process Clause itself determines what process is due before the state may deprive someone of a protected liberty interest.

*Id.* Similarly here, the statute requires process—a visit between case worker and parent—to protect a liberty interest created by the Constitution—a parent's interest in the care, custody, and management of his children. A state regulation creating procedural requirements to protect an existing constitutional right does not create a new constitutional right to that procedure. *See id.* Because 12 CCR § 2509-3:7.204(B)(1) does not create a liberty interest protected by procedural due process, Plaintiff Mundt has failed

to plead that Defendant Johnson violated his procedural due process rights. Thus, Defendant Johnson is entitled to qualified immunity based on the first prong alone.

Even if the Court were to assume that this regulation sufficiently created a procedural due process right, the right was not clearly established, so Defendant Johnson is entitled to qualified immunity based on the second prong as well. Plaintiff Mundt must cite to a Supreme Court or Tenth Circuit decision defining the contours of the alleged right. Plaintiff Mundt did not cite to any precedent establishing that a violation of 12 CCR § 2509-3:7.204(B)(1), or any analogous regulation or statute, is a violation of a procedural due process right. ECF No. 13 at 13. Thus, even assuming that such a right existed, it was not clearly established.

* * *

Accordingly, Defendant Johnson is entitled to qualified immunity, and the Court grants Defendants' motion to dismiss as to all claims pertaining to Defendant Johnson.

**B.  Defendant Gadziala**

Defendants next argue that Defendant Gadziala is entitled to qualified immunity on all claims because her seizure of D.J.M. from Plaintiff Mundt's custody did not violate any clearly established statutory or constitutional right. Plaintiff Mundt disagrees, arguing that the allegations in the complaint show that Defendant Gadziala did not have probable cause to remove D.J.M. The Court agrees and finds that Defendant Gadziala is not entitled to qualified immunity at this stage.

1. *Fourth Amendment Seizure*

a. *Constitutional Violation*

Plaintiff Mundt first alleges that Defendant Gadziala seized D.J.M. from his custody in violation of his Fourth Amendment rights. ECF No. 1, ¶¶ 30, 32, 115. In the context of social workers and child abuse investigations, a social worker's physical removal of a child from a parent's custody must be supported either by probable cause and a warrant,[5] or by exigent circumstances. *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1250 n.23 (10th Cir. 2003) "Probable cause" refers to the belief that "(1) the child's health or safety was at risk, and (2) this risk was due to the child's presence in the home." *Id.* at 1250.

Plaintiff Mundt argues that Defendant Gadziala did not have probable cause to remove D.J.M., relying on a "judicial deception" theory. Under this theory, "government officials' procurement through distortion, misrepresentation, and omission of a court order to seize a child is a violation of the Fourth Amendment." *Malik*, 191 F.3d at 1306 (citations omitted). However, the alleged misstatements or omissions must have been "so probative they would vitiate probable cause." *Id.* For a Fourth Amendment claim based on judicial deception to survive qualified immunity, there must be "a specific affirmative showing of dishonesty" by the social worker, meaning knowledge of a plaintiff's innocence or that a witness was lying, such that the social worker's knowledge of the false information defeats a finding of probable cause. *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)). Plaintiffs must also show that, "but

---

[5] Although seizures under the Fourth Amendment generally require a warrant, Defendant Gadziala obtained an *ex parte* emergency removal order which, in the context of a child abuse investigation, likely serves as the functional equivalent of a warrant. *See Roska*, 328 F.3d at 1248–49.

for the dishonesty, the [child's removal] would not have occurred." *Id.* In essence, if the allegedly false information were removed from the affidavit and there remains sufficient content in the affidavit to support a finding of probable cause, the false information is not the but-for cause of the removal, and no Fourth Amendment violation has occurred. *Id.*

Claims of judicial deception based on falsehoods or misrepresentations in affidavits and other court documents are cabined by two additional principles. First, while a social worker's statements in support of probable cause must be truthful "in the sense that the information put forth is believed or appropriately accepted by the [social worker] as true," they need not be "truthful in the sense that every fact recited . . . is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the [social worker's] own knowledge that sometimes must be garnered hastily." *Franks*, 438 U.S. at 165. Second, where a social worker receives information from an identified citizen informant, and "it seems reasonable to the [social worker] to believe that the [informant] was telling the truth, they need not take any additional steps to corroborate the information . . . before taking action." *J.B. v. Washington Cnty.*, 127 F.3d 919, 930 (10th Cir. 1997); *accord United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991) ("When an officer has received his information from some person . . . who it seems reasonable to believe is telling the truth, they need not take any additional steps to corroborate the information . . . before taking action.") (citation and internal quotation marks omitted).

Here, Plaintiff Mundt alleges a specific affirmative showing of dishonesty: that Defendant Gadziala "introduced false testimony in an Affidavit, in factual findings used to

support the emergency removal order, and other judicial proceedings" that led to the removal of D.J.M. ECF No. 1, ¶ 103; ECF No. 13 at 3. Plaintiff Mundt argues that "medical records, notes from communications with medical providers, a police report, a drug test, and other documents and evidence" that Defendant Gadziala had "at her disposal"[6] indicated that there were no actual concerns with D.J.M.'s safety. ECF No. 13 at 10. This information would have undermined her finding of probable cause, yet she omitted them from her findings to the state court.

The eleven allegedly false statements are:

(1)     "Throughout this current assessment it has become a concern that [Mr. Mundt] is unnecessarily seeking medical care from various entities for [D.J.M.] and suggesting that [Ms. Hennesy] is not providing adequate medical care for him."

(2)     "Caseworker Gadziala has reviewed documentation and spoken with medical professionals who have not shared any of the concerns that [Mr. Mundt] is making."

(3)     "Recently, [Mr. Mundt] has taken [D.J.M.] to medical appointments without [Ms. Hennesy's] permission or knowledge and has been successful in obtaining additional referrals for the child to see specialists."

---

[6] The Court notes that the relevant inquiry is whether Defendant Gadziala had probable cause *before* petitioning for removal, so it will only consider the information that Defendant Gadziala had at that time, rather than information she could have gotten. However, the information she could have gotten is relevant to the argument that she should have corroborated Ms. Hennesy's statement, as will be discussed below.

(4)    "[DCDHS] is concerned that [Mr. Mundt] is escalating in behaviors of
seeking out medical issues that don't exist for the child [D.J.M.], to the point
that the child [D.J.M.] is fearful something grave may happen to him if he
is not seen by the medical professionals that [Mr. Mundt] is demanding."

(5)    "During a home visit with the child he became tearful when discussing his
medical issues that, to him, are unresolved."

(6)    Mr. Mundt had initiated a "recent escalation in seeking additional medical
professionals and testing" for D.J.M.

(7)    "Reasonable efforts have been made to prevent removal and these have
failed."

(8)    "Throughout Caseworker Gadziala's assessment, information was
gathered from [D.J.M.'s] medical providers[.]"

(9)    "There are concerns based on review of [m]edical records that information
provided during these visits are being exaggerated in order for [D.J.M.] to
receive additional interventions which may not be necessary."

(10)    "Mr. Mundt's persistence has clearly impacted [D.J.M.'s] perception of his
own health issues."

(11)    "Despite court orders, Mr. Mundt continues to push for the highest level of
medical intervention for [D.J.M.]."

Plaintiff Mundt alleged that Defendant Gadziala "had no evidence or grounds to
remove" D.J.M. because the records from Rocky Mountain Pediatric Cardiology
confirming D.J.M.'s cardiac condition and Nurse Macky's statements about Plaintiff Mundt

being within his limitations "utterly contradicted" Ms. Hennesy's allegations. *Id.*, ¶¶ 22, 33.

Thus, Plaintiff Mundt alleges, Defendant Gadziala knew that these statements were

unsupported by any evidence and so were falsehoods or misrepresentations.

Based on the facts alleged in the complaint, these falsehoods are probative

enough to vitiate probable cause and were the but-for cause of D.J.M.'s removal. *See*

*Malik*, 191 F.3d at 1306. In other words, Defendant Gadziala did not have probable cause

based on the allegations in the complaint.

If an affiant includes false statements in an affidavit, or omits from it information

that would vitiate probable cause, the existence of probable cause is measured "by (1)

removing any false information from the affidavit, (2) including any omitted material

information, and then (3) inquiring whether the modified affidavit establishes probable

cause." *N.E.L. v. Gildner*, 780 F. App'x 567, 570–71 (10th Cir. 2019) (quoting *Patel v.*

*Hall*, 849 F.3d 970, 982 (10th Cir. 2017)). Therefore, the Court will remove the eleven

allegedly falsified statements from Defendant Gadziala's affidavit and submissions to the

state court, and will add any alleged omissions.

The Court considers all the facts alleged in the complaint that Defendant Gadziala

knew of before recommending D.J.M.'s removal to determine whether probable cause

existed. Based on the allegations in the complaint, at the time she petitioned for

emergency removal, Defendant Gadziala knew that:

    (1)   Ms. Hennesy retained sole medical decision-making authority regarding

            D.J.M. ECF No. 1, ¶ 9.

(2)     Plaintiff Mundt was allowed to attend one appointment per year with each
of D.J.M.'s medical care providers. *Id.*

(3)     In November 2020, D.J.M.'s middle school made a report to DCDHS
regarding D.J.M.'s inability to participate in strenuous activities and Ms.
Hennesy's failure to address D.J.M.'s needs. *Id.*, ¶ 11.

(4)     Ms. Hennesy wrote an email to Defendant Gadziala on January 5, 2021. In
the email, she accused Plaintiff Mundt of having Munchausen by proxy. The
email also stated that Plaintiff Mundt took D.J.M. to two unauthorized
telehealth medical appointments on December 29, 2020, was present at an
orthodontic appointment on January 5, 2021 that he was not authorized to
be at, and made an additional telehealth pediatric appointment for D.J.M.
on January 6, 2021. The email also stated that Plaintiff Mundt may give
D.J.M. a substance or drug to elicit symptoms, potentially amphetamines or
marijuana. *Id.* ¶¶ 14–15, 25.

(5)     Nurse Wacker confirmed that Plaintiff Mundt can have one appointment per
year but has no medical decision making "whatsoever," and she believed
he was in his limitations "from their office's point of view." *Id.* ¶ 18.

(6)     Defendant Gadziala received D.J.M.'s medical records from Rocky
Mountain Pediatric Cardiology on January 4, 2021. The records indicated
that Plaintiff was diagnosed with "tachycardia or dysrhythmia." *Id.* ¶ 19.

(7)     Ms. Hennesy made a report to the Parker Police Department regarding
alleged medical abuse and neglect by Plaintiff Mundt. *Id.* ¶ 24.

(8)     Officer Guzzo conducted a welfare check and observed that D.J.M. "seemed to be in good spirits and had all of his schoolwork complete. The residence was clean and organized." *Id.* ¶ 28.

(9)     While D.J.M. was being removed, D.J.M. made the following statements to Defendant Gadziala: "I'm feeling safe here"; "I feel safe here. I don't want to go back to [my mother's]. If my mom like falsely charges my dad with something, because I'm just going to say he's innocent is the thing"; "I'm just saying that I'm safe here, and whatever was said about my dad [is false]"; "I know my mom has lied about things"; "that's [Ms. Hennesy's home] the place I wouldn't want to go." *Id.* ¶ 36.

(10)    Defendant Gadziala knew of the prior Parental Responsibility Evaluation (PRE), which "discredit[ed] Plaintiff Mundt" and stated that Ms. Hennesy exhibited "habitual manipulation of others" and a "careless disregard for their rights," and has "a somewhat undisciplined imagination that takes liberties with objective reality to assert and reinforce her boastful self-image." *Id.* ¶ 44.

Based on the factual allegations in the complaint, Plaintiff Mundt has sufficiently pleaded that Defendant Gadziala's alleged falsifications or omissions were so probative that they vitiate probable cause. The only evidence that Defendant Gadziala had of a potential threat to D.J.M. was Ms. Hennesy's email and the restrictions on Plaintiff Mundt's involvement in D.J.M.'s medical care. Thus, Defendant Gadziala knew that Plaintiff Mundt was suspected of Munchausen's syndrome by proxy, that his involvement

in D.J.M.'s medical care was restricted by court order, that Ms. Hennesy believed that Plaintiff Mundt had attended multiple appointments in violation of the court order in the past week, that Ms. Hennesy believed that Plaintiff Mundt could be drugging D.J.M. to induce symptoms, and that D.J.M. had received a diagnosis for heart irregularities. This information is not enough to support her conclusion that D.J.M.'s health or safety was at risk due to his presence in Plaintiff Mundt's custody, largely because Defendant Gadziala knew that Ms. Hennesy's allegations may not be credible.

Plaintiff Mundt argues that Defendant Gadziala did not take Ms. Hennesy's credibility issues into consideration when she petitioned for D.J.M.'s emergency removal. The PRE mentioned Ms. Hennesy's habitual manipulation of others and undisciplined imagination that takes liberties with objective reality, which should have made Defendant Gadziala question Ms. Hennesy's credibility. *Id.* ¶ 44. A witness's statement, on its own, is only enough to establish probable cause if an officer knows the identity of the informant, who "it seems reasonable to believe is telling the truth," and the officer "thus was able to assess that person's veracity." *J.B.*, 127 F.3d at 930. In contrast, information from an anonymous tipster must be corroborated to establish reasonable suspicion. *Id.*; *United States v. Hinojos*, 107 F.3d 765, 768 (10th Cir. 1997). Here, as alleged, it was not reasonable for Defendant Gadziala to believe that Ms. Hennesy was telling the truth in her email without corroboration because of the statements about her credibility issues in the PRE. Thus, based on the allegations in the complaint, Defendant Gadziala petitioned for D.J.M.'s removal based on conclusions that were supported by Ms. Hennesy's email, which had credibility issues; Plaintiff Mundt's restrictions, which, as alleged, he was

complying with; D.J.M.'s cardiology diagnosis, which demonstrated an actual need for medical care; the middle school's report, which also demonstrated actual medical needs; and the statements of Nurse Wacker, which established that Plaintiff Mundt had restrictions but appeared to be complying with them. As alleged, Defendant Gadziala should have corroborated Ms. Hennesy's allegations by performing the drug test before petitioning for removal, reviewing D.J.M.'s other medical records to ascertain whether he had attended additional appointments, or talking with D.J.M.'s other providers. Thus, based on the allegations in the complaint, Defendant Gadziala did not have probable cause to petition for D.J.M.'s emergency removal, so Plaintiff Mundt adequately pleaded a constitutional violation.

### b. Clearly Established

Plaintiff Mundt also adequately pleaded that the constitutional violation was clearly established. The Tenth Circuit has established since at least 1990 that social workers relying on untrue allegations in seeking a removal order violate the Fourth Amendment's prohibition against unreasonable searches and seizures. *Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990) ("[A] reasonable public official would have known that using known false information to secure an order to justify entry and search of a private home would violate the fourth amendment."). Because Plaintiff Mundt has alleged that Defendant Gadziala used false statements when she sought D.J.M.'s removal, her actions align with *Snell's* holding. Similarly, the Tenth Circuit in *Malik v. Arapahoe Cnty. Dept. of Soc. Servs.*, 191 F.3d 1306, 1316 (10th Cir. 1999), held that "it was clearly established law that government officials' procurement through distortion, misrepresentation and omission of

a court order to seize a child is a violation of the Fourth Amendment." *Id.* (internal citations omitted). Thus, it was clearly established that using misrepresentations to secure an emergency removal order was a Fourth Amendment violation.

### 2.  Fourteenth Amendment Substantive Due Process

Plaintiff Mundt further alleges that Defendant Gadziala infringed his and D.J.M.'s "fundamental right to familial integrity" under the Fourteenth Amendment. ECF No. 1, ¶¶ 106–12. The Court agrees that Plaintiff Mundt has plausibly alleged this violation.

"The government's forced separation of parent from child, even for a short time, represents a serious impingement on a parent's right to familial association." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (internal citation omitted). The right to familial integrity or familial association, however, "is not absolute, but must be weighed against the state's interest in protecting a child's health and safety." *Id.* (citations omitted). As such, to prevail on a "familial integrity" claim grounded in substantive due process, a plaintiff must show (i) that a state official "intended to deprive the plaintiff of a protected relationship with a family member," and (ii) that the official's "intrusion into the relationship was not warranted by state interests in the health and safety of the family member." *Halley*, 902 F.3d at 1154–55 (citation omitted). Pleading these elements satisfies the Tenth Circuit's "shocks-the-conscience" standard for this substantive due process claim. *Id.*

Defendants argue that, under the familial integrity balancing test set forth above, Defendant Gadziala did not impose an "unwarranted intrusion" into the relationship between Plaintiff Mundt and D.J.M. because any "intrusion" was occasioned by legitimate

concerns for D.J.M.'s welfare. *See* ECF No. 9 at 14–15; ECF No. 16 at 8–9. The law provides for the removal of a child upon probable cause to believe that the child's health or safety is at risk due to the child's presence in the parent's or caregiver's home. *See Roska*, 328 F.3d at 1250. As discussed previously, based on the facts alleged by Plaintiff Mundt, Defendant Gadziala did not have probable cause to believe that D.J.M.'s presence in Plaintiff Mundt's custody posed risks to D.J.M.'s health or safety, in part because the allegations of potential medical harm were not corroborated and, as alleged, were refuted by other evidence that Defendant Gadziala had or could have accessed.

At this stage, Plaintiff Mundt's complaint plausibly alleges that Defendant Gadziala's "intrusion into the relationship was not warranted by state interests in the health and safety of" D.J.M. because Defendant Gadziala lacked probable cause. *Halley*, 902 F.3d at 1154–55. Plaintiff Mundt sufficiently pleads a violation of his substantive due process rights.

Additionally, the right to familial association is clearly established, and it is clearly established that a violation of that right occurs when there are inadequate pre-deprivation procedures. *See, e.g., Malik*, 191 F.3d at 1315 ("[E]xcept in extraordinary circumstances, a parent has a liberty interest in familial association that cannot be violated without adequate pre-deprivation procedures."); *Roska*, 328 F.3d at 1250. As will be discussed below, the pre-deprivation procedures were inadequate as alleged, and so Defendant Gadziala is not entitled to qualified immunity on the substantive due process claim.

### 3. *Fourteenth Amendment Procedural Due Process*

Finally, Plaintiff Mundt alleges that Defendant Gadziala removed D.J.M. from his custody without first engaging in a "full, fair, and adequate investigation" as required by the Fourteenth Amendment. ECF No. 1, ¶¶ 99–105.

"[A] parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures." *Malik*, 191 F.3d at 1315. Similarly, an "ex parte hearing based on misrepresentation and omission does not constitute notice and an opportunity to be heard." *Id.* Because Plaintiff Mundt pleaded that Defendant Gadziala made misrepresentations and omissions during the ex parte hearing, as discussed above, he has sufficiently pleaded that he was denied notice and an opportunity to be heard in violation of his Fourteenth Amendment procedural due process rights. This right was clearly established by *Malik*, which similarly involved procurement of a court order to seize a child through alleged distortion, misrepresentation, and omission held to be a violation of procedural due process rights. *See id.* Thus, Defendant Gadziala is not entitled to qualified immunity as to the procedural due process claim.

\* \* \*

The Court denies Defendants' motion to dismiss as to all claims pertaining to Defendant Gadziala.

### IV. CONCLUSION

Consistent with the above analysis, the Court GRANTS Defendants' motion to dismiss, ECF No. 9, as to Defendant Johnson. The Court DENIES the motion to dismiss as to Defendant Gadziala. The Clerk of Court is directed to reopen this case. The parties

are directed to contact Magistrate Judge Starnella's Chambers within one week to set a

scheduling conference.

Dated this 28th day of February 2025.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge